UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JASON PECK, et al., ) | |
| ) | |
| ) | |
| ) | |
| Plaintiff, ) | NO. 5:18-CV-615-DCR-MAS |
| ) | |
| v. ) | |
| ) | |
| AIR EVAC EMS, INC. d/b/a AIR EVAC ) | |
| LIFETEAM, ) | |
| ) | |
| ) | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff Jason Peck's ("Peck"), individually and on behalf of those similarly situated, unopposed Motion for Class Certification and Preliminary Approval of Class Action Settlement. [DE 20]. For the reasons stated herein, the Court recommends the District Court certify the class and preliminarily approve the settlement.

### I.   BACKGROUND

A.   **FACTUAL AND PROCEDURAL BACKGROUND**

Peck filed this action on behalf of both current and former flight paramedics and nurses employed by Defendant Air Evac EMS, Inc. ("Air Evac"), an air ambulance company. Peck alleges Air Evac had a practice of unlawfully deducting "sleep time" from employees' overtime pay. For example, according to Peck, Air Evac's policy required some of the putative class members to work seven consecutive 12-hour shifts (for a total of 84 hours) in a seven-day period but did not pay overtime unless the employee worked more than seven shifts in a seven-day period. [DE 1-1 at Page ID # 13 (Complaint ¶¶ 16-18)]. Peck claims other employees worked 24-hour

1

shifts but were not paid overtime unless they worked more than four 24-hour shifts in a two-week period. [DE 1-1 at Page ID # 13 (Complaint ¶ 19)]. As a result, Peck and the putative class members ("Class Members") were not compensated for all hours, including sleep time, and worked in excess of forty (40) hours per week, in violation of the Kentucky Wage and Hour Act ("KWHA"). KRS 337.285.

Peck filed this lawsuit in Fayette Circuit Court on October 25, 2018, and Air Evac removed to this Court based on diversity jurisdiction and the Class Action Fairness Act. [DE 1]; 28 U.S.C. § 1446; 28 U.S.C. § 1332(d). In the companion case, *Day et al. v. Air Methods Corp.*, the District Court held that air ambulance companies are not exempt from the KWHA. *Day et al. v. Air Methods Corp.*, 2017 WL 4781863 (E.D. Ky. Oct. 23, 2017). The result was that Air Evac in this matter would likely be found liable for unpaid overtime, including unpaid "sleep time." Consequently, the parties in this case determined mediation would be mutually beneficial in reaching a resolution of this matter. [DE 20-1 at Page ID # 110].

Both parties utilized the services of an expert to analyze payroll and time data for current and former Kentucky employees of Air Evac. The analysis included consideration of class data to determine potential damages, including back pay, liquidated damages, employment benefits, interest, attorney's fees, and any other damages. The estimates provided by these experts of unpaid wages due to the putative class differed by less than two percent. [DE 20-1 at Page ID # 111].

For purposes of settlement, Air Evac has conceded that class certification is appropriate. [DE 20-1 at Page ID # 112]. However, the Court will conduct a full analysis of the prerequisites for class certification under Rule 23(a) and (b) as well as the new requirements for preliminary settlement approval under 23(e).

2

B.   SUMMARY OF PROPOSED SETTLEMENT

The parties ultimately negotiated a settlement with the assistance of a mediator ("Settlement"). [DE 20-1 at Page ID # 109]. The Settlement provides for a maximum Gross Settlement Fund of $3,000,000, which includes up to $800,000 in attorneys' fees and costs and a $15,000 incentive to Peck.

The proposed settlement class (the "Class") is defined as:

> All persons currently or formerly employed by AEL in the Commonwealth of Kentucky as a flight nurse, flight paramedic, or pilot at any time during the Class Period, which is October 25, 2013 through preliminary approval.

[DE 20-1 at Page ID # 112]. Air Evac has produced records that Peck has analyzed, and the parties agree that the class definition includes 428 current and former employees. The settlement proposes that Air Evac pay the Gross Settlement Fund of $3,000,000 into a settlement fund that will be distributed by a third-party administrator Rust Consulting, Inc. (the "Administrator"). The Net Settlement fund from which the Class Members who do not Opt-out will be paid the Gross Settlement Fund minus the attorneys' fees and costs and the incentive Peck (the "Settlement"). The Administrator's fee will be paid by Air Evac in addition to the Net Settlement Amount.

The Administrator will be responsible for reaching Class Members. The Settlement Agreement requires the Administrator to finalize and mail the Notice to Class Members (the "Notice") and Opt-out to each individual who is a member of the Class; maintain a static website where the Notice can be downloaded; and independently respond to the inquiries of class members regarding relevant procedures. [DE 20-1 at Page ID # 113]. Air Evac will provide the list of Class Members from its records. The Administrator will attempt to locate a current address for any Class Member whose mail is returned as undeliverable and will re-send the Notice and Opt-out to such an address where possible. For Class Members who do not timely submit a request to opt-out of the action, their claims will be released and barred once the Settlement is final.

3

Plaintiff's Counsel will petition the Court for attorneys' fees and costs of up to $800,000, which is approximately twenty-six percent of the Gross Settlement Fund. Individual payments to Class Members will be calculated based upon Air Evac's time and payroll records. Class Members will be fully compensated for their unpaid overtime during the relevant time period. The individually calculated payments are set forth in Exhibit A-1 to the proposed Settlement Agreement filed with Peck's unopposed motion. [DE 20-2 at Page ID # 151-61].

## II. STANDARD OF REVIEW

FED. R. CIV. P. 23 governs class action lawsuits. Subsection (e) was modified in December 2018 to require parties to submit additional information so that the Court may preliminarily approve a settlement prior to notice being sent to Class Members. Rule 23(e) now employs a two-step approval process that requires the court: (1) to approve the sending of notice to class members under subdivision (e)(1) and (2) to then hold a hearing and approve the proposed settlement under subdivision (e)(2). This two-step process applies even where, as here, the class has not been certified. In such a circumstance, the Advisory Committee noted that the "notice required under Rule 23(e)(1) then should also satisfy the notice requirements of amended Rule 23(c)(2)(B) for a class to be certified under Rule 23(b)(3), and trigger the class members' time to request exclusion. Information about the Opt-out rate could then be available to the court when it considers final approval of the proposed settlement." FED. R. CIV. P. 23(e)(2) Advisory Committee's Note (2018 Amendment).

To effectuate this process, a court must "frontload" its analysis by considering many of the same factors at the initial notice stage that it will consider at the later approval stage. Consistent with the new rule and as part of this first step, the Court will analyze whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

judgment on the proposal." If both of those questions are answered in the affirmative, the Court will consider whether the proposed method of giving notice satisfies Rule 23(c)(2)(B).

### III. ANALYSIS

A. **APPROVAL OF SETTLEMENT PURSUANT TO RULE 23(E)(2)**

The amendments to Rule 23(e) set forth a list of specific factors and issues for courts to consider in deciding whether a settlement is "fair, reasonable, and adequate" such that courts may approve the sending of notice and the proposed settlement. Under this new rubric, the Court must examine four issues: (1) whether the proposed class was adequately represented; (2) whether the proposed settlement was reached through an arm's length negotiation; (3) the proposed relief to the class is adequate; and (4) whether the proposed settlement treats class members equitably. The Court will address each of these factors, in turn, below.

Moreover, the Advisory Committee made clear that "[t]he goal of this amendment is not to displace any factor [developed by the circuit courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). Accordingly, in addition to analyzing the new factors set forth in Rule 23(e)(2), the Court will analyze the relevant Sixth Circuit factors.

   1. **Rule 23(e)(2) Factors**

      a. *Adequate Representation and Arm's Length Negotiation*

Regarding these first two factors, the Advisory Committee offered the following guidance:

> These paragraphs identify matters that might be described as "procedural" concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement. . . .
>
> The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics. For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel

5

> negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent. The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.

FED. R. CIV. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). The Court, based upon the record, finds no dispute related to the representation and negotiations in this matter.

Namely, counsel for Peck (and proposed lead class counsel) is an experienced class action litigator. The decision to settle the current dispute was made after an exhaustive review of payroll records and other information by competing experts. Considering the prior ruling in the companion case of *Day v. Air Methods Corp.* in which plaintiffs' counsel is the same, the parties rightly focused on the amount of possible damages and were able to structure a fully informed settlement. *See Day et al. v. Air Methods Corporation*, 2017 WL 4781863 (E.D. Ky. October 23, 2017).

Moreover, there is no evidence or concern about collusion. The settlement was reached with the assistance of Pierce Hamblin, a former litigator and mediator well-versed in wage and hour law. The parties, after reviewing the reports of the competing experts and through the efforts of Mr. Hamblin, reached a settlement that was based upon an arm's-length negotiation.

  b. *Adequate Relief*

Rule 23(e)(2)(C) requires the Court to review "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

6

First, the proposed settlement provides full and complete payment of the overtime due to each Class Member for the relevant time period. [DE 20-1 at Page ID # 114]. While it is possible that the Class Members could recover more if this settlement is not approved, it is possible they could recover less or nothing at all. "[I]t is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D. N.Y. 2011). According to the parties, if this matter does not reach a settlement, Air Evac intends to litigate the Court's prior holding that the Airline Deregulation Act does not pre-empt the KWHA, an issue that the Sixth Circuit Court of Appeals has not yet addressed. [DE 20-1 at Page ID # 125]. This unsettled legal issue presents significant risk for both parties. The parties further state that continued litigation will involve substantial discovery, dispositive motion practice, and a trial that would be "lengthy and costly." *Id*. After the trial, the parties expect there would be a lengthy appeal period.

Second, the parties agree that the Class Members will be notified by the Administrator via first class United States mail at the last known address of the Class Members as provided by Air Evac. The Administrator will attempt to confirm each Class Member's address through the United States Postal Service's change of address database. For any notices returned as undeliverable, the Administrator will perform a computerized skip trace search and re-send notices for those Class Members for whom a new address is found. Additionally, the parties propose that "after final approval of the Settlement after the final approval hearing, the completion of settlement administration, and within seven (7) days after the Court's final approval order becomes a final un-appealable order, and upon further order of the Court, the Settlement Administrator will mail Individual Settlement Payments to class members who have not opted-out." [DE 20-1 at Page ID

# 114]. The Court finds that these are reasonable actions that will ensure Class Members are notified, have the opportunity to Opt-out, and receive their funds.

Third, Peck's counsel seeks attorneys' fees and costs totaling $800,000, or approximately 26% of the total settlement funds. Pursuant to KRS 337.385, the employer is liable for attorneys' fees when the employer fails to provide the overtime compensation required by KRS 337.285. "Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." FED. R. CIV. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). The proposed settlement in this matter will pay all Class Members his or her entire overtime wages owed; Air Evac has agreed to pay attorneys' fees in addition to the overtime wages owed. [DE 20-1 at Page ID # 131-32]. "The 'majority of common fund fee awards fall between 20% and 30% of the fund.'" *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 426 (6th Cir. 2012) (quoting *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir.1999)). In this instance, the attorneys' fees are squarely in the middle of the typical range. Thus, the Court finds the fee to be reasonable, particularly given the fact the fee will not reduce the amount the Class Members receive.

Finally, the Court must review any side agreements between the parties, outside of the Settlement. Paragraph 73 of the Settlement agreement asserts that the Settlement constitutes "the entire Settlement among these Parties, and no oral or written representation, warranties or inducements have been made to any Party concerning this Settlement or its exhibits other than the representations, warranties, and covenant contained and memorialized in this Settlement and its exhibits." [DE 20-2 at Page ID # 147]. Therefore, the parties do not have any side agreements for review by the Court.

   *c. Equitable Treatment*

The Court must determine whether the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  The Court finds that the proposed Settlement treats all Class Members equitably.  Although there is great disparity between the amounts some Class Members will receive, these amounts are based on the actual number of unpaid overtime hours each Class Member worked during the relevant time period.  Thus, those Class Members that worked more unpaid overtime hours will be compensated at a correspondingly higher amount; likewise, from the information submitted it appears that the Class Members' rate of pay per hour recoverable in this lawsuit may differ based on each individual's rate of pay at the time the Class Member logged the unpaid overtime hours.  [*See* DE 20-1 at Page ID # 122].

 **2. <u>Sixth Circuit Factors</u>**

Prior to the 2018 Amendments to Rule 23, the Sixth Circuit relied on its own set of factors to determine whether a proposed class action settlement should be approved:

> To determine whether a settlement agreement satisfies Rule 23's fairness standard, we consider: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).  These Sixth Circuit factors are somewhat duplicative of the new considerations set forth in Rule 23(e).  Nevertheless, the Advisory Committee specifically stated the goal of the 2018 amendment was "not to displace any factor [developed by the federal circuit courts]."  Advisory Committee Notes, 324 F.R.D. at 918.  In accordance with this directive and due to the dearth of any Sixth Circuit case law on the new Rule 23(e) provisions, the Court will briefly review each of the Sixth Circuit factors as well.

9

### a. Risk of Fraud or Collusion

As stated, there is no evidence in this matter that the parties colluded with one another, or that the settlement is the result of a fraud. Although Peck's lawyer stands to collect a substantial fee, it is not unusual for the class counsel to obtain a fee around 25% (or more), even when that results in a fee that is six figures (or more). *See Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 426 (6th Cir. 2012) (noting that attorney's fees are usually between 20% and 30% of the class fund).

### b. The complexity, expense and likely duration of the litigation

The parties estimate this litigation would be lengthy and expensive for all parties involved. The parties stated:

> If this Settlement is not approved, the Parties face an extended and costly battle with expensive discovery (including expert discovery), motions for summary judgment, renewed motions for decertification, trial preparation and trial that would likely be lengthy and costly. Further, if the Parties do not settle the Plaintiffs' claims, it would likely take several years and additional legal fees before reaching final resolution of those claims, including exhaustion of all appeals.

[DE 20-1 at Page ID #125]. The Court finds that the parties' concerns about the length and cost of litigation are warranted. The Sixth Circuit has not addressed this court's ruling that the KWHA applies to air ambulance employees' sleep time. This case will likely require discovery sufficient to support dispositive motions, and, if those do not resolve the case, the case would likely proceed to trial. Either way, the parties expect to appeal the outcome. The entire process would likely take several years to reach a final resolution. Thus, early resolution is likely beneficial to the Class Members and Air Evac.

### c. The amount of discovery engaged in by the parties

The parties have engaged in informal discovery sufficient to identify Class Members and their potential claims against Air Evac. Due to the expected expense of discovery, Air Evac

10

requested the parties pursue settlement prior to engaging in formal discovery. [DE 20-1 at Page ID #110]. Although proceeding to a settlement agreement "without expert opinions or formal discovery . . . the class counsel could not have entered into the settlement negotiations with much more than an uneducated guess as to the merits of the case and the propriety and fair value of a settlement[,]" in this case the Court's concerns are assuaged by the fact that there is little dispute between the parties as to the value of each putative Class Member's actual damages, and Air Evac proposes paying those damages in full. *Olden v. Gardner*, 294 Fed. App'x 210, 218, 2008 WL 4297245, at *7 (6th Cir. 2008). It appears that additional discovery would, therefore, focus on the legal arguments or consequential damages. The Court believes the discovery most pertinent to the value of the Settlement is that related to the amount of actual damages, which the parties have already undertaken.

### d. The Likelihood of Success on the Merits

The Court "cannot evaluate a settlement's fairness without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.' . . . In fact, this is the most important of the seven factors that we are supposed to consider in reviewing the fairness of a settlement." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 723 (6th Cir. 2013) (internal quotation marks and citations omitted) (dissent).

This Court recently held that air ambulance companies, such as Air Evac, were not exempt from the KWHA by virtue of the Airline Deregulation Act. *See Day et al. v. Air Methods Corporation*, 2017 WL 4781863 (E.D. Ky. October 23, 2017). Although there remains uncertainty in the law because the Sixth Circuit has not addressed this issue nor the good faith defense to the claim that Air Evac intends to raise, it appears that Peck is likely to prevail on the legal arguments at trial. If he was to prevail on the legal arguments, it appears there is little factual dispute between

the parties that there were employees who were not paid for "sleep time." Accordingly, Peck has established a likelihood of success on the merits.

> e. *The Opinions of Class Counsel and Class Representatives*

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010). Peck's counsel in this matter asserts that "[t]he parties desire to avoid these risks and uncertainties, as well as the loss of time and resources, and thus, determined that a settlement pursuant to the terms and conditions of the tendered Settlement Agreement would be more beneficial than continued litigation. [Peck's] counsel believes the terms of the Settlement Agreement are in the best interests of the class and are fair, reasonable, and adequate." [DE 20-1 at Page ID # 111]. Having previously found no collusion or reason to suspect fraud in the Settlement, the Court defers to this reasoned assessment of Peck's counsel as to the benefit of settlement in this matter.

> f. *The Reaction of Absent Class Members*

Because the parties have reached a proposed settlement in the early stages of this litigation, and the Court is reviewing this issue at the preliminary, pre-notice stage, the reaction of absent class members is impossible to know at this time. However, the parties note that many of the Class Members did not know that they had a claim for unpaid overtime until the named plaintiff filed this action. [DE 20-1 at Page ID #121]. These individuals will receive full compensation for those hours previously unpaid. If the settlement is approved, the Administrator will make several efforts, described herein, to notify class members and alert them to the Opt-out provisions. Class Members will have the opportunity to come and object. The Class is only 428 individuals, all of whom are known to Air Evac (unlike a large products case, where thousands or millions of people may have

purchased a product and the defendant has no way of knowing who they are with certainty). The Court expects that the vast majority of Class Members will receive notice and the Opt-out form. Any objections to the settlement can be addressed at the final approval hearing.

### g. Public Interest

The public interest in assuring employees receive all the pay they are statutorily entitled to is served in this case because Air Evac has changed its practices regarding "sleep time" and overtime pay. "Likewise, there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citations omitted).

### B. CLASS CERTIFICATION

The 2018 Amendments to Rule 23(e) require a court to determine whether it "will likely be able to: . . . certify the class for purposes of judgment on the propos[ed settlement]." Fed. R. Civ. P. 23(e)(1)(B)(ii). A Court may authorize distribution of the settlement notice only where it determines class certification is likely (and approval of the settlement pursuant to Rule 23(e)(2) and Circuit law is also likely, as determined *supra*). Thus, the Court will review the likelihood of class certification under subsections (a) and (b) of Rule 23.

#### 1. Rule 23(a) Factors

Rule 23(a) sets forth the prerequisites a named plaintiff must satisfy for class certification:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

 (1) the class is so numerous that joinder of all members is impracticable;

 (2) there are questions of law or fact common to the class;

 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  Air Evac concedes, and the Court agrees, that the 428 members of the putative class easily meets the numerosity requirements.  The Sixth Circuit has "observed that [t]here is no strict numerical test for determining impracticability of joinder. . . . Nevertheless, while the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative."  *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir. 2005) (internal citations and quotation marks omitted).  The 428 identified class members is not speculative, but a concrete number derived from Defendant's employment records.  Joinder of 428 individuals to this lawsuit would be so cumbersome as to render it impractical.

    Air Evac further concedes that all the putative Class Members, including Peck, were subjected to the same overtime policy, satisfying both commonality and typicality.  Air Evac readily admits to that its policy required employees to work a certain number of either 12- or 24-hour shifts per 1- or 2-week cycle, and that they were not paid for "sleep time" as part of their overtime pay.  The fact that some employees may have worked 12-hour shifts and others 24-hour shifts does not prevent certifying the class based on commonality or typicality.  "The commonality requirement deals with shared questions of law or fact.  Although Rule 23(a)(2) speaks of 'questions' in the plural, we have said that there need only be one question common to the class."  *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  In fact, there is only one question in this matter to be answered: should Air Evac have paid the putative Class Members for overtime during the hours they were sleeping during their shifts?  Because there is just one question presented in this case, Peck—similarly situated as all other Class Members who were not paid for their sleep time—represents a typical claim in this matter.  *See General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330 (1980) ("The typicality

requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims.").

Regarding the fourth 23(a) factor, the Sixth Circuit set forth a two-part test to aid Courts in determining whether the named plaintiff will fairly and adequately protect the interests of the class: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). As discussed above, Peck has a claim typical of all 428 putative Class Members. There is nothing in the record to suggest his interests might be antagonistic to the unnamed Class Members. He will receive an incentive payment of $15,000 in addition to the backpay of $677.33. If the class is certified and the settlement approved, 27 Class Members will receive greater recoveries than Peck's $15,677.33. [DE 20-1 at Page ID # 113 and DE 20-2 at Page ID 152-61]. The second requirement is also met. To date, Peck has pursued this matter through experienced and qualified counsel who are not only litigating this matter, but another, companion case in this Court. *See Day, et al. v. Air Methods, Corp., et al.*, 5:17-CV-183-CHB-MAS (E.D. Ky.).

For the reasons stated above, the Court finds the requirements of Rule 23(a) are met in this case.

### 2. Rule 23(b) Descriptors

Once a Court has determined the requirements of Rule 23(a) have been met, the Court must determine whether the proposed class action satisfied one of the types of cases outlined in subsection (b). Here, the parties moved for certification pursuant to Fed. R. Civ. P. 23(b)(3), which states:

> (b) A class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . .

15

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). There is no dispute that the putative Class Members are united by a common question of law: whether they should have been paid for overtime during which they were sleeping.

If Class Members are forced to proceed individually, some Class Members will likely be foreclosed from any recovery at all. Indeed, according to the chart of potential payments, approximately 100 putative class members—nearly one-quarter of the putative class—has claims for actual damages of less than $1,000. Such a low claim makes it impractical and unlikely any of these individuals will be able to retain a lawyer and pursue their backpay in court. This is even more true when the Court considers that the Sixth Circuit has not ruled on the law in this area. Thus, these putative Class Members would face legal risk, litigation expense, and very little payout. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.")

Maintaining this lawsuit as a class action, on the other hand, will streamline this litigation exponentially. The question of law implicated in each putative class member's case is identical; the only difference in their claims is the amount of overtime pay allegedly due to them. The

16

proposed settlement will pay each putative Class Member the full amount of unpaid overtime allegedly due to them; thus, although the amount each Class Member will receive will differ, each will be made whole based on their individual situation.

**C.     NOTICE PLAN**

The parties attached their proposed Notice and Opt-out form to the Motion for Class Certification and Preliminary Approval. [DE 20-2 at Page ID 163-70]. As discussed *supra*, the Administrator will use several means to discover current addresses for putative class members and will re-send the Notice and Opt-out to Class Members where possible if the original is returned undeliverable. The Administrator will also develop a website where the Class Members can download the Notice and Opt-out forms.

Rule 23(c)(2)(b) requires the Court to

(B) For (b)(3) Classes. For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B). The Court has reviewed the parties' proposed Notice and determined it satisfies the requirements of Rule 23(c)(2)(B) and it is in plain, easily understandable language. The Court further finds that First Class United States Postal Mail is the most practical method of providing notice under the circumstances. Air Evac has a mailing address for each of the putative Class Members, many of whom are current employees. The Court finds the requires of Rule 23(c) are met by the proposed Notice plan. *See Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (upholding a settlement even where 20% of the class members did not receive notice until after the objection period had run because the extensive notice scheme the case "was 'reasonably calculated to reach interested parties'") (*citing Karkouli's Inc. v. Donhany*, 409 F.3d 279, 282 (6th Cir. 2005)).

## IV.    CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS** the District Court find as follows:

1) That the Court will likely be able to approve the Settlement Agreement on behalf of all current and former Flight Nurses, Flight Paramedics and Pilots employed by Air Evac EMS, Inc. d/b/a Air Evac Lifeteam ("AEL") in the Commonwealth of Kentucky at any time from October 25, 2013 through the date the District Court enters an Order of preliminary approval;

2) That the Court will likely be able to certify the proposed Class for the purposes of judgment on the proposed Settlement Agreement only;

3) The District Court approve the proposed Notice and Opt-out forms set forth in DE 20-2;

4) The District Court approve a website and First Class United States Postal Mail as means of distributing notice to the Class Members, to be disseminated within 60 days of the entry of the Order of preliminary approval; and

5) A Final Approval Hearing shall be held before the District Court 90 at the discretion of the District Court with the District Court to establish any and all necessary interim deadlines as described in FED. R. CIV. P. 23.

Pursuant to FED. R. CIV. P. 42 and 28 U.S.C. § 363(b) and (c), the parties shall file objections to this Report and Recommendation within fourteen days from the date of entry of the same.

Entered this 5th day of June, 2019.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge