UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JASON PECK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 18-615-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| AIR EVAC EMS, INC., d/b/a | ) | **MEMORANDUM OPINION** |
| AIR EVAC LIFETEAM, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Jason Peck has filed an unopposed motion for class certification and for preliminary approval of a class action settlement for unpaid overtime. [Record No. 20] United States Magistrate Judge Matthew Stinnett issued a report, recommending that the Court approve the settlement agreement, certify the class, approve the notice and opt-out forms, and approve a website and first-class mailings distributing notice to class members. [Record No. 22]

This Court conducts a *de novo* review of the portions of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The Court is not required to review claims in which neither party objects to the findings of the magistrate judge. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Here, the parties jointly objected only to correct the magistrate judge's erroneous references to sleep time.[1] [Record No. 23] After reviewing the

---

[1] The plaintiff's unopposed motion states that "sleep time" was unlawfully deducted from the employee's overtime calculation. [Record No. 20-1, p. 4] The magistrate judge adopted this fact and included it in the Report and Recommendation. The parties objected, stating that this matter

- 1 -

settlement agreement and the report and recommendation, the Court will preliminarily approve the settlement agreement and notice. The Court will also conditionally certify the class, approve class counsel, and appoint a class representative.

### I.

Peck, a former flight nurse employed by Defendant Air Evac EMS, Inc. ("Air Evac"), filed a purported class action on behalf of current and former flight paramedics, flight nurses, and pilots employed by Air Evac, for overtime compensation between October 25, 2013, to the present. Prior to March 2014, the defendant's overtime policy required an employee to work one hundred twenty hours per two-week pay period before receiving overtime. From March 2014 to July 2018, the policy required that an individual work eighty-four hours per pay period before receiving overtime. Air Evac's policy provided that non-exempt employees were entitled to shift pay when hours were worked in excess of 7 shifts per given pay period. The defendant changed its overtime policy prior to reaching the settlement to pay all flight nurses, flight paramedics, and pilots overtime for all time worked in excess of forty hours per week. Peck asserts that Air Evac's former policy violates the Kentucky Wage and Hour Act ("KWHA").

The plaintiff filed this lawsuit in Fayette Circuit Court on October 25, 2018. The defendant removed the matter to this Court pursuant to the Class Action Fairness Act. In a companion case, this Court previously found that air ambulance companies are not exempt from the KWHA. *Day et al. v. Air Methods Corp.*, No. 17-183, 2017 U.S. Dist. LEXIS 174693 (E.D. Ky. Oct. 23, 2017). Air Evac concluded it would likely be found liable for unpaid

---

only involved overtime work and did not include sleep time. [Record No. 23] Accordingly, the only issue presented concerns time worked in excess of 40 hours per week.

overtime and the parties agreed that mediation would be helpful in resolving this matter. The parties used experts to analyze payroll and time data. They agreed that there was great uncertainty and, in the absence of an approved settlement, the parties could face long and uncertain litigation.

The parties reached an agreement that includes a monetary maximum gross settlement fund of $3,000,000.00, including up to $800,000.00 in attorney's fees and costs and a $15,000.00 incentive to Peck. [Record No. 20-2, p. 6] The proposed class is "[a]ll current and former flight nurses, flight paramedics, and pilots employed by [Air Evac] in the Commonwealth of Kentucky at any time from October 25, 2013 through [] preliminary approval." [Record No. 20-2, p. 30] The parties agree that the class includes 428 current and former employees of Air Evac.

The defendant will pay the total settlement amount into a settlement fund if approved. The class members who do not opt-out of their share of the net settlement fund will receive their share after deductions for attorney's fees, costs, and the incentive to Peck. Rust Consulting, Inc., will administer the net settlement fund and provide notice to potential class members. The parties state that the agreement requires that the administrator finalize and mail by first class mail a notice packet and opt-out form to each member of the class, maintain a static website where the notice can be downloaded, and respond to inquiries from the class members regarding procedures to be followed. Further, the administrator will attempt to locate current addresses for the class members if the notice packet is returned as undeliverable and will resend the notice and opt-out form. If a class member does not timely submit a request to opt-out of the action, his or her claims will be released and barred once the settlement is final.

Individual settlement payments were calculated by reviewing Air Evac's time and payroll records to establish the amount of unpaid overtime assuming that Peck's class claims were true. [Record No. 20-2, pp. 17-27]

## II.

The plaintiff has filed an unopposed motion for preliminary approval of the class action settlement and release, the proposed notice and opt-out forms, and for attorney's fees. [Record No. 20] Before the Court can preliminarily approve the class action settlement, it must preliminarily certify the class under Rule 23(a) and (b) of the Federal Rules of the Civil Procedure, appoint class counsel, and approve the class representative. Afterward, it must determine if the proposed settlement is fair, adequate, and reasonable. *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007).

### a. Certification of the Class

Rule 23 of the Federal Rules of Civil Procedure sets out the requirements for maintaining a class action. Before the Court may certify a class, the proposed class must satisfy all four of the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). If each of these four prerequisites is established, then the plaintiffs must show that the class may be maintained under one of the theories available under Rule 23(b). *Glazer v. Whirlpool Corp.* (*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*), 722 F.3d 838, 851 (6th Cir. 2013), *cert. denied*, 571 U.S. 1196 (2014).

The party seeking to certify a class bears the burden of establishing that certification is proper. *In re American Medical Sys., Inc.,* 75 F.3d at 1079. A class action may not be approved simply "by virtue of its designation as such in the pleadings" nor may prospective class

representatives simply rely upon "mere repetition of the language of Rule 23(a)" to support their motion. *Id*. Instead, an adequate basis for each prerequisite must be pled and supported by the facts. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974); *see also Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 629 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1757 (2012). Additionally, the Court must engage in a rigorous analysis to determine whether the prerequisites of Rule 23 are satisfied. *Glazer,* 722 F.3d at 851. There is a heightened standard for certification of a settlement-only class. *See UAW*, 497 F.3d at 625.

At the outset, the Court must determine whether the class definition is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). The Court must also determine whether the named plaintiff is a member of the proposed class. *Brashear v. Perry County*, No. 06-143, 2006 U.S. Dist. LEXIS 77471, at *4 (E.D. Ky. Oct. 20, 2006); *Thacker v. Chesapeake Appalachia, L.LC.,* 259 F.R.D. 262, 266 (E.D. Ky. 2009). Here, the parties have agreed that there are 428 members of the class. The individuals in the class are sufficiently definite because they are current and former flight paramedics, flight nurses, and pilots for Air Evac from October 2013 to the present. The named plaintiff is a member of the class because he is a former flight nurse for Air Evac. The Court can determine whether class members are included in the class by looking to the employment and payroll information of Air Evac for the relevant time period and omit persons who choose to opt-out of the class. Accordingly, the class is sufficiently definite and the named plaintiff is a member of the proposed class.

### i. Rule 23(a)

The parties stipulated to certification of the class for the purpose of settlement only. However, the Court will independently review the factors set forth for certification of the class. Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

First, the putative class meets the numerosity requirement. "There is no strict numerical test for determining impracticability of joinder." *In re American Medical Sys.*, 75 F.3d at 1079. In the present case, there are 428 individuals in the proposed class which is ascertainable from the defendant's employment records. The class is sufficiently numerous such that joinder of all members of the class would be impracticable.

Second, there is a common question of law or fact common to the class. To show commonality, the plaintiffs' claims must be based on a common contention that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). "The commonality test is qualitative, rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re American Medical Sys.*, 75 F.3d at 1080. The common question presented in this action is whether the defendant should have paid the putative class members

for overtime in accordance with KRS Chapter 337. All members of the proposed class were subject to the same overtime provision at the same company.

Third, Peck's claims are typical of the class.

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. . . . Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re American Medical Sys.*, 75 F.3d at 1082 (internal citations and quotations omitted). Peck's claims are typical of the class because he was subject to the same overtime provisions as the other members of the putative class and his injury is directly related to the wrong of the class. Further, a representative's claim can still be typical even if the class members suffer varying levels of injury. *See Reese v. CNH Am., LLC*, 227 F.R.D. 483, 487-88 (E.D. Mich. 2005) (referencing *Bittinger v. Tecumseh Prods*. Co., 123 F.3d 877, 884-85 (6th Cir. 1997)). Some members of the class will receive higher settlements because they worked more overtime. But the overtime provision and legal theory are the same for all class members.

Finally, the Court must "measure the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.),* 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013)). Class representatives are generally adequate if the representatives are "part of the class and possess the same interest and suffer the same

injury as the class members." *East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 303 (1977).

The defendant concedes for purposes of settlement that the named plaintiff and counsel are adequate. The named plaintiff in this action is a member of the class, he suffered the same injury as the unnamed class members, and he possesses the same interest in receiving his past overtime compensation. It does not appear that there is a conflict among the named plaintiff and the unnamed members of the class because all of the class members will receive what they are actually owed for past overtime. Accordingly, Jason Peck can be appointed as class representative.

"In making the determination of adequacy of representation the district court should consider the experience and ability of counsel for the plaintiffs." *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977). The parties and the magistrate judge explain that plaintiff's counsel are experienced in class action litigation and are also involved as plaintiff's counsel in a similar class action before this Court. Based on the foregoing, the Court concludes that named plaintiff and class counsel are adequate.

In summary, the prerequisites of Rule 23(a) are satisfied.

     ii. Rule 23(b)

The plaintiff moved for certification of this class action under Rule 23(b)(3), which states that:

> A class action may be maintained if Rule 23(a) is satisfied and if . . .
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

"In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole.'" *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (quoting *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)); *Bridging Communities, Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016). Rule 23(b)(3) also requires that a class action be the superior method for fairly and efficiently adjudicating the controversy.

As stated above, there is a common question about whether the class members are entitled to overtime under KRS Chapter 337. Magistrate Judge Stinnett correctly noted that "[t]he question of law implicated in each putative class member's case is identical; the only difference in their claims is the amount of overtime pay allegedly due to them." [Record No. 22, p. 16] All members of the class were subject to the same overtime practices. The parties assert that not certifying the class would result in 428 current and former employees being forced to bear the burden and expense of individually asserting their claims and it may lead to inconsistent judgments. Members of the class would benefit from the pooled resources of a class action. The class members appear to not have begun other litigation. And many of the class members did not know that they have a viable claim until Peck pursued this action.

Accordingly, the parties have satisfied the requirements of Rule 23(b) and class certification is appropriate.

**b. Appointment of Class Counsel Under Rule 23(g)**

Rule 23(g) requires that the Court appoint class counsel when certifying a class. In determining whom to appoint as class counsel the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class

Fed. R. Civ. P. 23(g)(1)(A). Further, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, the plaintiff's counsel spent time analyzing significant amounts of payroll and time data to calculate how much each member of the putative class was owed for overtime. The plaintiffs have utilized five attorneys and four support staff to investigate and bring this matter. Additionally, the parties and Magistrate Judge Stinnett assert that plaintiff's counsel is experienced with class action litigation. [Record No. 22, pp. 6, 15; Record No. 20, p. 20] Further, plaintiff's counsel is involved in a similar class action before this Court that is centered around the same legal issue presented in this case. Accordingly, Charles W. Arnold and Christopher D. Miller of Arnold & Miller, PLC and J. Robert Cowan and Gerry L. Calvert, II, of the Cowan Law Office, PLC, are appointed as class counsel.

### c. Preliminary Approval of Settlement Pursuant to Rule 23(e)(2)

"Once a class has been approved, the Court may approve a settlement that will bind class members 'only after a hearing and only on finding that it is fair, reasonable, and adequate.'" *Thacker*, 259 F.R.D. at 270 (citing Fed. R. Civ. P. 23(e)(2)). There are three steps to approving a class action settlement. *Thacker*, 259 F.R.D. at 270 (referencing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001)). First, the Court must preliminarily approve the settlement. *Id*. Second, class members must be given adequate notice of the proposed settlement. *Id*. Third, the Court "must hold a hearing to determine whether the proposed settlement is fair, reasonable, and adequate." *Id*.

To preliminarily approve the class settlement, the Court must determine whether the proposed settlement would be "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016). Magistrate Judge Stinnett noted that Rule 23(e) was amended to set forth specific factors for courts to consider in determining whether this requirement has been met. [Record No. 22, p. 5] He also noted that Advisory Committee Notes state that the goal of the amendment was not to displace factors developed by the circuit courts in deciding whether to approve a proposed settlement agreement. [Record No. 22, p. 5] As such, both the magistrate judge and this Court considers the new Rule 23(e) factors as well as the factors utilized by the Sixth Circuit.

### i. New Rule 23(e) Factors

Rule 23(e) was amended in 2018 to set forth specific factors to determine whether a settlement is "fair, reasonable, and adequate." These factors include:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The class representatives and class counsel adequately represent the class and the proposal was negotiated at arm's length. Regarding Rule 23(e)(2)(A) and (B), Magistrate Judge Stinnett referenced the 2018 Advisory Committee Notes which explained that:

> The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics. For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent. The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.

Magistrate Judge Stinnett explained that the attorneys for Peck are experienced class action litigators and are involved as plaintiffs' counsel in a companion case involving a similar issue. Additionally, the parties decided to settle after extensive negotiations with the assistance of an experienced mediator, Pierce Hamblin, who has handled wage and hour class actions in the past. The parties debated the strength and weaknesses of their claims and defenses including credits for any prior overpayment of overtime premiums, applicability of seventh day overtime premiums, and the defendant's "good faith" defense. The factors set forth in Rule 23(e)(2)(A) and (B) weigh in favor of settlement.

Next, the relief provided to the class is adequate. The proposed settlement includes full payment of overtime for each of the putative class members. Additionally, as the parties and the magistrate judge note, there are multiple risks if litigation continues – including the chance to recover nothing. The parties also contend that the defendant would litigate the issue of whether the Airline Deregulation Act preempts KWHA. The Sixth Circuit has not yet ruled on the issue, which could make litigation unpredictable. Further, the proposed settlement would help the parties save time while avoiding the burden and expense of protracted discovery and trial. The parties explained that they desired to avoid the risks and uncertainty of continued litigation, as well as lost time and resources.

The plaintiffs' attorneys seek fees and costs totaling $800,000.00, which is roughly 26% of the total settlement fund. A common fund award is appropriate when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980). The Court can use either the lodestar or percentage of the fund method in common fund cases. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993). The Court must determine whether a percentage of the fund is fair and reasonable. *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000) (awarding approximately 30% of the common fund in attorney's fees).

Magistrate Judge Stinnett stated that "the majority of common fund fee awards fall between 20 % and 30% of the fund." [Record No. 22, p. 8 (citing *Gooch v. Life Investors Ins. Co. of America,* 672 F.3d 402, 426 (6th Cir. 2012).] He concluded that attorney's fees were reasonable because they were squarely in the middle of the range and the fee amount will not reduce the amount the class members receive. The undersigned agrees with this analysis.

While courts also must review any side agreements apart from the settlement agreement, there are none in this case. The settlement agreement explains that it represents "the entire Settlement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Settlement or its exhibits other than the representations, warranties, and covenant contained and memorialized in this Settlement and its exhibits." [Record No. 20-2, p. 13]

Finally, the proposed settlement treats the class members equitably. While the class members will receive differing amounts, the amount that each class member will receive is based on the actual number of unpaid overtime hours that each person worked. Thus, the class members are treated equitably relative to each other.

All of the factors in Rule 23(e)(2) weigh in favor of settlement.

### ii. Sixth Circuit Factors

The Sixth Circuit considers "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest" in determining if a settlement is fair, reasonable, and adequate. *UAW*, 497 F.3d at 641. Many of the factors overlap with the factors set forth in Rule 23(e)(2).

First, there is no risk of fraud or collusion. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia*, L.L.C., 695 F. Supp. 2d 521 (E.D. Ky. 2010) (citing *Leonhardt v. ArvinMeritor, Inc.,* 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)). The parties engaged in months of settlement negotiations, discussed the strengths and weaknesses of their claims and

defenses, and engaged a well-versed mediator in determining the terms of the settlement. There is no evidence that the parties or their counsel engaged in fraud or collusion.

Second, the complexity, expense, and potential duration of the litigation weigh in favor of settlement. The magistrate judge concluded that the entire litigation process would likely take several years and an early resolution is beneficial to the class and the defendant. As has been noted previously, the issues in this case have not been addressed by the Sixth Circuit and the unsuccessful party(s) would likely appeal if this case went to trial.

Third, the parties engaged in some informal discovery to identify class members and potential claims. However, the parties asked to delay formal discovery until after pursuing settlement. The defendant did produce payroll and time data for the 428 Kentucky employees that constitute the putative class. The parties also employed experts to conduct data analysis of the unpaid wages. The undersigned agrees with Magistrate Judge Stinnett that the most pertinent part of discovery is related to the amount of actual damages, and the parties have already engaged in discovery on that issue.

Fourth, the Court must weigh the "plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631. "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). This Court held recently in a companion case that air ambulance companies are not exempt from the KWHA through the Airline Deregulation Act. *See Day,* 2017 U.S. Dist. LEXIS 174693 at *6-10. Thus, the plaintiff is

likely to prevail at trial on its claims of overtime violations. This factor weighs in favor of settlement.

Next, the opinion of experienced counsel and class representatives weigh in favor of settlement. "In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker,* 695 F. Supp. 2d at 532. The parties explained that, in the absence of a settlement, they would face long and uncertain litigation and they assert that settlement is in the best interest of the class.

Further, the reaction of absent class members does not yet weigh one way or the other in determining whether settlement is appropriate. Typically, some objections are to be expected in a class action. "If only a small number are received, the fact can be viewed as indicative of the adequacy of the settlement." *Id.* (citing *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 527 (E.D. Mich. 2003)). Magistrate Judge Stinnett notes that, because the Court is reviewing the proposed settlement at the preliminary, pre-notice stage, it cannot ascertain the reaction of absent class members.

Finally, the public interest weighs in favor of settlement. There is a strong policy favoring settlement in class actions. *See Thacker*, 695 F. Supp. 2d at 533 (referencing *UAW*, 497 F.3d at 632). The public interest weighs in favor of resolving matters fairly and expeditiously. Further, the public interest weighs in favor of properly paying workers overtime.

Accordingly, the majority of the Sixth Circuit factors weigh in favor of settlement. The reaction of absent class members is currently neutral because the class members have not yet received notice.

**d. Notice**

Finally, the Court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1)(B); *see also* Fed. R. Civ. P. 23(c)(2)(B). "The notice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *UAW*, 497 F.3d at 629 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

If classes are certified under Rule 23(b)(3) the Court must direct notice under Rule 23(c)(2)(B), which requires that the notice must include in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed notice form indicates that this action involves claims of violation of overtime requirements and unjust enrichment. [Record No. 20-2, p. 30] It states that Air Evac denies liability and wrongdoing. [Record No. 20-2, p. 30] It also explains that the class involves all current and former flight nurses, flight paramedics, and pilots employed by the defendant from October 25, 2013, through the date of preliminary approval. [Record No. 20-2, p. 30] The notice form also explains the class members options and how class members may be excluded if that the desire of a particular member. [Record No. 20-2, pp. 32-33] It notes that an individual can opt out within 30 days of notice being sent by filling out, signing, and dating the opt-out statement. [Record No. 20-2, p. 32] The form also explains that, if a

class member does not timely opt-out, they agree to release their claims. And it notes that if an individual chooses to do nothing, he or she will be bound by the terms of the settlement. [Record No. 20-2, pp. 31-32]

The settlement agreement provides that the defendant shall give the administrator the class information within 14 days of the entry of a preliminary approval order for purposes of mailing the notice packet. [Record No. 20-2, p. 7] Within 21 days of receiving the information, the administrator shall mail by first class mail a notice packet to each class member. [Record No. 20-2, p. 7] The administrator is required to check the addresses with the Postal Service. [Record No. 20-2, p. 7] If a notice packet is returned as undeliverable, the packet will be re-mailed to a forwarding address, but if a forwarding address is not provided the Administrator will perform a computerized skip trace search. [Record No. 20-2, p. 7]

The Court finds that the proposed plan for providing notice is reasonably clear and conforms with the requirements of Rule 23(c).

Both the unopposed motion and Magistrate Judge Stinnett note that the administrator will create a static website where class members can download notice. [Record No. 20-1, p. 8] However, the notice packet and the settlement agreement do not make reference to a static website. The parties must amend the settlement agreement to include information about creating a static website.

**III.**

Based on the reasons stated above, it is hereby

**ORDERED** as follows:

1. The consent motion for preliminary approval [Record No. 20] is **GRANTED** and the parties' proposed settlement is **PRELIMINARILY APPROVED**. The plaintiff's objections to the Magistrate Judge's Report and Recommendation is **SUSTAINED**.

2. Air Evac's president must submit a written declaration to the named plaintiff to provide to the Court, as required by the settlement agreement. [Record No. 20-2, p. 7]

3. The class defined in the parties' settlement agreement [Record No. 20-2, pp. 1-16] is **CONDITIONALLY CERTIFIED** for settlement purposes, including $800,000.00 in attorney's fees. Additionally, the schedule set forth in the settlement agreement is **APPROVED**.

4. Plaintiff Jason Peck is **APPOINTED** as class representative.

5. Charles W. Arnold and Christopher D. Miller of Arnold & Miller, PLC, and J. Robert Cowan and Gerry L. Calvert, II, of the Cowan Law Office, PLC, are **APPOINTED** as class counsel.

6. Rust Consulting, Inc., is **APPOINTED** as the settlement administrator to administer the settlement in accordance with the settlement agreement.

7. The notice packet and opt-out form [Record No. 20-2, pp. 28-36] are **APPROVED**, conditioned on the settlement agreement and notice packet stating that a static website has been created to download notice.

8. A final fairness hearing will be **SCHEDULED** for **Wednesday, October 16, 2019**, beginning at the hour of **1:30 p.m.**, at the United States Courthouse in Lexington, Kentucky.

9. The United States Magistrate Judge's Report and Recommendation [Record No. 22] is **ADOPTED**, in part, and **INCORPORATED** here by reference.

Dated: July 17, 2019.



Signed By:
*Danny C. Reeves*
United States District Judge