UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JASON PECK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 18-615-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| AIR EVAC EMS, INC., d/b/a | ) | **MEMORANDUM OPINION** |
| AIR EVAC LIFETEAM, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Plaintiff Jason Peck has filed an unopposed motion for approval of the settlement agreement and to certify the class. [Record No. 28] The Court has reviewed the motion, the settlement agreement, conducted a final fairness hearing, and considered all of the objections to the proposed settlement. For the reasons set forth below, the Court concludes that the notice provided to potential class members was reasonable, the objections lacked merit, and the settlement is fair, reasonable, and adequate. Additionally, the requested attorney's fees are reasonable. Finally, the schedule for disbursement of the settlement is reasonable.

**I.**

Peck is a former flight nurse employed by Defendant Air Evac EMS, Inc. ("Air Evac"). He filed a class action on behalf of former flight nurses, flight paramedics, and pilots employed by Air Evac for overtime compensation dating from October 25, 2013, to July 17, 2019. Before March 2014, Air Evac required that an individual work one hundred twenty hours per pay period before receiving overtime pay. Air Evac modified the policy in March 2015 to lower the threshold to eighty-four hours per pay period before being eligible for overtime

compensation. Air Evac then changed its policy in July 2018 to pay all flight nurses, paramedics, and pilots overtime for all hours worked in excess of forty hours per week. Peck filed this lawsuit alleging that the previous overtime policy violates the Kentucky Wage and Hour Act ("KWHA").

The parties previously agreed to a gross settlement fund of $3,000,000.00, including up to $800,000.000 in attorney's fees and costs and a $15,000.00 incentive for Peck. The parties later filed a motion to amend the settlement seeking $750,000.00 in attorney's fees and a gross settlement fund of $2,950,000.00. [Record No. 33] The Court granted the motion to amend the settlement to reduce the amount of attorney's fees. The proposed class includes 428 "current and former flight nurses, flight paramedics, and pilots employed by [Air Evac] in the Commonwealth of Kentucky at any time from October 25, 2013 through July 17, 2019." [Record No. 28-2, p. 7] The parties explained that individual settlement payments were calculated by reviewing Air Evac's payroll and timecard records to establish the amount of unpaid overtime for each class member assuming that the claims were true.

The Court preliminarily approved the proposed settlement; conditionally certified the class; appointed class counsel, a class representative, and a settlement administrator; approved the schedule outlined in the settlement agreement; and approved the notice packet and opt-out form. [Record No. 24] Peck then submitted an unopposed motion for final class certification and approval of the class action settlement. [Record No. 28] A final fairness hearing was originally scheduled for October 2019.

After preliminary approval, Rust Consulting, the administrator of the settlement fund, obtained an address, website, and toll-free telephone number to receive questions, opt-out statements, objections, and provide information on the settlement. Air Evac provided Rust

with a list of the last known addresses, social security numbers, and award amounts for all the potential class members. Notice packets were mailed to 427 class members through first class mail and the class members were advised they had a month to file an opt-out statement, dispute, or objection. Rust traced addresses for 18 notice packets that had been returned as undeliverable. Five notice packets remain undeliverable. Additionally, five class members disputed their individual settlement payment; counsel reviewed the disputes and discussed them with Rust Consulting. [Record No. 28-1, p. 11] Further, one individual, Caleb Michael Ensley, submitted an opt-out statement. [Record No. 28-1, p. 11]

Two individuals submitted letters to the Court to object to the settlement offer. First, Caroline Caine submitted an objection stating that she was "cheated" out of money owed and a strong message should be sent by penalizing the defendant more harshly. [Record No. 25] She sought interest, as well as civil and statutory penalties. Caine originally planned to appear at the final fairness hearing but did not attend. [*Id.*] Next, Robert Steven Haney filed an objection to the settlement offer, explaining that the paperwork sent to him regarding the lawsuit does not include 32 hours of overtime he worked every other week. [Record No. 26] He noted that his settlement is only for $1,837.63 for 62 hours of overtime, but he worked 64 hours of overtime every month. [*Id.*] He attached all of his paystubs to his objection, his offer letter, and requests to AirEvac for his pay stubs and clock in/clock out sheets. [Record Nos. 26-1, 26-2, 26-3] Haney attended the final fairness hearing and discussed his individual settlement payment with the Court and counsel for the parties.

In the motion for final approval and the motion to amend the settlement, the plaintiff requests final approval of the settlement agreement, approval of attorney's fees of $750,000.00, and to accept the remaining schedule for the settlement process. The parties

request that the deadline for the defendant to provide the gross settlement fund to the administrator be within seven days of the effective date of the settlement and that the administrator disburse the gross settlement fund within seven days of receiving the fund. [Record No. 28-1, p. 12]

In October 2019, the Court directed the plaintiff to notify the Court regarding whether it had provided the proper notice under 28 U.S.C. § 1715(b) to the appropriate government officials. The parties then notified the Court that notice had not originally been filed but was mailed on October 10, 2019. Accordingly, the final fairness hearing originally scheduled for October 16, 2019, was continued until January 17, 2020.

At the final fairness hearing, held on January 17, 2020, the Court discussed the settlement with counsel and invited anyone present to comment on the settlement if they wished. The parties discussed the terms of the settlement agreement, the objections, and the reasonableness of attorney's fees. Additionally, Class Member Robert Haney appeared and discussed his objection to the individual settlement agreement. The parties also addressed a procedure for resolving Haney claim. No other individuals attended the hearing.

## II.

A. Notice

Rule 23(e)(2) of the Federal Rules of Civil Procedure requires that notice is directed in a reasonable manner to all class members that would be bound by the settlement. Additionally, notice must comport with due process by being "reasonably calculated to reach interested parties." *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005). Further, Rule 23(c) necessitates that notice is provided to the class regarding "the nature of the action; the definition of the class certified; the class claims, issues, or defenses; information on how a

class member can enter an appearance with their lawyer; information on how class members can opt into or out of the settlement; and the binding effect of the settlement agreement."

Rust Consulting mailed the notice of settlement through first class mail after receiving a mailing list from the defendant. It also established a mailing address, toll-free telephone number, and website that included information about the settlement and a way to reach out with questions. Rust utilized the National Change of Address Database before mailing notice packets to 427 class members and explained the potential class members' options. Rust then performed address traces on the notice packets returned as undeliverable. Five notice packets remain undeliverable.

The steps taken to provide notice to potential class members were reasonable, the notice packet could be understood by the average prospective class member, and it adequately explained the terms of the settlement and proposed class members' options about opting out or joining the class. *See Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 526 (E.D. Ky. 2010) (concluding that the notice process was adequate under Federal Rule of Civil Procedure 23 and the standards for due process). Accordingly, the Court finds that the notice provided was reasonable under the circumstances presented.

### B. Notice Under 28 U.S.C. § 1715

The Class Action Fairness Act requires that notice be served on the appropriate federal and state officials within "10 days after a proposed settlement of a class action is filed in court[.]" 28 U.S.C. § 1715(b). Further, "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)." 28 U.S.C. § 1715(d). Notice was filed after the Court issued

an Order requesting information about whether appropriate notice had been given. [Record No. 31] Notice was sent to the appropriate officials on October 10, 2019. [*Id*.] The appropriate officials did not respond to the notice or attend the final fairness hearing. The Court concludes that the defendant complied with the Class Action Fairness Act notice requirements.

### C. Opt-Outs and Objections

When the motion was originally filed, five individuals disputed their individual settlement payment, one individual submitted an opt-out statement, and two objections were filed with the Court. "Once preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir.1983)). Objections to the proposed settlement "must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objections." Fed. R. Civ. P. 23(e)(5)(a).

"Objections based purely upon individual claims of loss do not warrant disapproval of the proposed settlement." *EEOC v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1335 (E.D. Mo. 1995). United States District Judge Karen Caldwell explained in *Thacker* that the "Court's role in assessing the fairness of a settlement is not to make a *de novo* evaluation of whether the measures applied to all claimants provide each individual with a satisfactory recovery." *Thacker*, 695 F. Supp. 2d at 528. The dispute over the individual settlement amounts were reviewed by counsel and Rust Consulting discussed the disputes with the individuals. Here, Class Member Robert Haney discussed his dispute regarding his individual settlement amount at the final fairness hearing and a tentative resolution was reached.

As noted above, Caine objected to the settlement because she contended she was cheated out of money owed to her and she believes that a strong, punitive message should be sent to the defendant. Accordingly, she asserted that she deserves interest owed and civil and statutory penalties. She did not attend the final fairness hearing to discuss her objection. The lack of punitive sanctions does not necessarily demonstrate that the settlement is unreasonable, unfair, or inadequate. *See McDonnell Douglas*, 894 F. Supp. at 1337. Accordingly, her objection is without merit.

The Court also concludes that the entire settlement is reasonable. Each individual gets his or her individual settlement amount based on the *full number* of the hours the person worked over forty hours a week. Thus, all members of the class are made whole by the settlement.

### D. Final Class Certification

The class was provisionally certified for purposes of the proposed settlement. [Record No. 28] Class certification requires that the class meet all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and one of the subsections of Rule 23(b). "The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

#### i. Rule 23(a) Prerequisites

Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002). The proposed class is sufficiently numerous such that joinder of all members would be impracticable. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). There are 428 individuals in the class which was ascertained from

Air Evac's employment records. *See Elliot v. LVNV Funding, LLC*, No. 3:16-cv-00675-RGJ, 2019 U.S. Dist. LEXIS 143692 (W.D. Ky. Aug. 23, 2019) (concluding that a class with over 400 distinct members meets the numerosity requirement).

Next, there are common questions of law or fact for the entire class and the class representative's claims are typical of the class. *In re Whirlpool,* 722 F.3d at 853. "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). The named plaintiff and all potential class members were subject to the same overtime policy, and the common question is whether the potential class members should have been paid overtime in accordance with KRS Chapter 337. Both the commonality and typicality prerequisites are met.

Finally, the Court must "measure the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Greenberg v. Procter & Gamble Co.* (*In re Dry Max Pampers Litig.*), 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013)). Peck is an adequate class representative because he suffered the same type of injury as the proposed class members and possesses the same interest in receiving his past overtime compensation. *See East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 303 (1977) (explaining class representatives are generally adequate if they suffer the same harm and have the same interest as the other class members). Finally, the representation of the class is adequate because class counsel are experienced class

action litigators and recently finished a similar class action before this Court. Accordingly, the class meets all requirements of Rule 23(a).

### ii. Rule 23(b)

The plaintiff seeks to certify the class under Rule 23(b)(3) which requires that:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

The predominance inquiry requires that a proposed class be "sufficiently cohesive to warrant certification." *Amchen Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As the Court has previously explained, a putative class meets the predominance inquiry when the legal or factual questions in a case are "subject to generalized proof, and thus applicable to a class as a whole." *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (quoting *Amchem Prods, Inc.*, 521 U.S. at 623). Additionally, a class action under Rule 23(b)(3) must be the superior method for fairly and efficiently adjudicating the matter.

The proposed class members' claims all share the same question of law and the only difference is the potential amount of overtime pay due to them. Each individual was subject to Air Evac's same overtime policy. The Court has previously noted that a class action allows the individuals to pool their resources and not suffer from inconsistent judgments. Further, some potential class members may not receive a significant payout making it burdensome to

pursue litigation on their own. Additionally, it does not appear that any proposed class members have begun other litigation and many did not know they had a viable claim until Peck pursued this litigation.

E. Final Approval of Settlement

After a final fairness hearing is held, the Court must determine whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). As was mentioned in the Court's Memorandum Opinion and Order preliminarily approving the settlement, Rule 23(e) now sets forth specific factors to determine whether a settlement is "fair, reasonable, and adequate." Additionally, the Sixth Circuit has developed specific factors to determine whether a settlement is "fair, reasonable, and adequate."

The Rule 23(e) factors are:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

First, the class representative and class counsel have adequately represented the class. The parties' attorneys are experienced class action litigators and they utilized a mediator in conducting arm-length negotiations. Further, the attorneys reviewed a significant amount of time and payroll data in determining the amount owed to members of the class.

Second, the proposal was negotiated at arm's length. The parties engaged in extensive negotiations with the assistance of an experienced mediator. Further, both parties engaged their own experts to calculate the amount of overtime owed. Additionally, the parties discussed the strengths and weaknesses of their claims and defenses before determining that settlement was the best option.

Third, the settlement is adequate because it includes full payment of overtime for each of the potential class members. Additionally, there are always risks to litigation, and there is a lack of binding appellate authority on whether the Airline Deregulation Act preempts the KWHA which adds an additional level of risk in continuing litigation. The amount of attorney's fees and costs is within a reasonable range in a common fund fee award. The amount of attorney's fees requested is about 25% of the total settlement fund, which is between the normal 20% to 30% range. *See Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 426 (6th Cir. 2012). The attorney's fees will not reduce the amount each putative class member will receive. Also, there are no side agreements apart from the settlement itself.

Finally, the class members are treated equitably in comparison to other members of the class. Each class member will receive the sum to which they are entitled based on the actual amount of unpaid overtime hours that he or she worked. Accordingly, the Rule 23(e) factors support that the settlement is fair, reasonable, and adequate.

The Sixth Circuit factors in determining whether a settlement is fair, reasonable, and adequate are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest

*UAW*, 497 F.3d at 641. No single factor is determinative, and the Court considers the factors relevant to the circumstances of each individual case. *In re Auto. Parts Antitrust Litig.*, No. 2:17-cv-13005, 2018 U.S. Dist. LEXIS 225726, at *231-32 (E.D. Mich. Nov. 6, 2018).

The settlement agreement was the result of arms-length negotiations by qualified counsel and there is no indication that there was any fraud or collusion. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker,* 695 F. Supp. 2d at 531 (citing *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).

The complexity, expense, and likely duration of litigation weigh in favor of settlement. Settlement would allow the parties and the class to avoid the burden and expense of trial, expensive discovery, and protracted motions practice. Additionally, the defendant would likely attempt to litigate this Court's ruling on whether the Airline Deregulation Act preempts the KWHA. The parties note that it would likely take several years and additional legal fees to resolve the claims.

The parties previously engaged in some informal discovery to identify class members and potential claims. Air Evac produced payroll and time data for all potential class members and each side utilized experts to conduct data analysis of the unpaid wages.

The Court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981)). This Court previously held that air ambulance companies are not exempt from the KWHA. *Day v. Air Methods Corp.*, No. 5:17-183-DCR, 2017 U.S. Dist. LEXIS 174693, at

*6-10 (E.D. Ky. Oct. 23, 2017). The plaintiff would likely prevail on the overtime violation claims.

Class counsel and the class representative believe that the settlement amount is reasonable, especially in light of the risks of litigating the claims. The judgment of class counsel that settlement is in the best interest of the class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010). Class counsel are experienced class action litigators and believe that the benefits of settlement outweigh the risk of continued litigation and the costs that would be incurred.

Additionally, the reaction of absent class members weighs in favor of the settlement. Of the 428 class members, five class members disputed their individual settlement payments and one individual filed an opt-out statement. Further, there were objections from Caroline Caine and Robert Haney. "A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 527 (E.D. Mich. 2003)). Only Robert Haney attended the final fairness hearing to raise an objection to his individual settlement amount and one individual opted out.

The public interest also weighs in favor of settlement. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (internal citations and quotations omitted). Allowing settlement in this matter will promote the fair and expeditious resolution of the matter.

F. Attorney's Fees

Rule 23(h) of the Federal Rules of Civil Procedure allows for "reasonable attorney's fees and nontaxable costs that are authorized by law or parties' agreement." A common fund award is appropriate when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lumpsum judgment recovered on his behalf." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980). In determining the amount of fees in common fund cases, the Court may use either the lodestar method or percentage of the fund method. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993). Most common fund awards are between 20% and 30% of the total settlement fund. *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 426 (6th Cir. 2012). And in evaluating whether the requested fee request is reasonable, the Court considers:

> (1) the value of the benefit rendered to the plaintiff class []; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

The parties request $750,000.00 in attorney's fees and costs, which is approximately 25% of the total settlement fund. [Record No. 33] The defendant agreed to pay attorney's fees in addition to the total amount of unpaid wages for the potential class members. The settlement provides value to the putative class because each individual member will receive the full amount of their unpaid overtime wages. As has been explained at several points in this opinion, class counsel are experienced with class action litigation and expended significant

resources in negotiating a settlement. Accordingly, $750,000.00 in attorney's fees and costs is reasonable.

G. Schedule

Peck also asks that the Court to adopt the proposed schedule to effectuate the remainder of the settlement process. More specifically, he requests that the defendant provide the gross settlement fund to the administrator within seven calendar days of the effective date of settlement. And Peck further requests that the administrator disburse the gross settlement fund within seven calendar days of receiving the gross settlement fund. This schedule is also reasonable.

**III.**

In summary, the notice provided was reasonable. Additionally, the settlement amount and attorney's fees and costs are fair, reasonable, and adequate. There was only one opt-out and only one true objection to the settlement. The settlement as a whole is fair and reasonable and the class will be finally certified and the settlement accepted. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Jason Peck's motion to certify the class and approve the final settlement [Record No. 28] is **GRANTED**.

2. The settlement agreement is **APPROVED**.

3. The provisionally certified class is now finally certified pursuant to Federal Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of settlement only.

4. The schedule for effectuating the settlement agreement is **APPROVED**. The defendant shall provide the gross settlement fund within seven days of the date of this

Memorandum Opinion and Order. The administrator shall disburse the funds within seven days of receiving the gross settlement fund.

5. All objections to the settlement are **OVERRULED**.

6. The Court approves the settlement and attorneys' fee request, as amended by the plaintiff's counsel.

7. This Court retains jurisdiction over one outstanding issue regarding Robert Haney's settlement payment raised during the fairness hearing. The parties shall notify the Court within **thirty (30) days** whether the claim has been resolved or if the parties need the Court's assistance in finally resolving any issues regarding Mr. Haney's claim.

Dated: January 21, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky